AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | )   Case No.   1:19 MJ  1-125 |
| Khalil Yacub | ) |
| aka Carlos | ) |
| _Defendant(s)_ | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____June, 2018 - February, 2019_____ in the county of _____Hamilton_____ in the

_____Southern_____ District of _____Ohio_____, the defendant(s) violated:

| _Code Section_ | _Offense Description_ |
|---|---|
| 18 U.S.C. 2314 | Transportation of Stolen Goods |
| 18 U.S.C. 371 | Conspiracy to Commit Offense |
| 18 U.S.C. 1028(a)(7) | Unlawful Possession or Use of a Means of Identification |

This criminal complaint is based on these facts:

　　　　See Affidavit

☑ Continued on the attached sheet.

_____
_Complainant's signature_

Melissa Cooper, Task Force Officer, FBI
_Printed name and title_

Sworn to before me and signed in my presence.

Date:  2/20/19

_____
_Judge's signature_

City and state:  _____Cincinnati, Ohio_____

Hon. Karen L. Litkovitz, U.S. Magistrate Judge
_Printed name and title_

## AFFIDAVIT IN SUPPORT OF
## A CRIMINAL COMPLAINT

I, Melissa Cooper, a Colerain Township Detective assigned to the Federal Bureau of Investigation (FBI) as a Task Force Officer, being duly sworn, depose and state as follows:

### INTRODUCTION

1.  I am a Detective with the Colerain Township Police Department assigned to the Federal Bureau of Investigation as a Task Force Officer. As a Task Force Officer, I have been assigned to investigate various International Terrorism matters but have also assisted in other criminal investigations. I have received training in these subject matters as well. I have been a law enforcement officer since 2004 beginning my career with the Hamilton County Sheriff's Department.

2.  I make this affidavit in support of an application for a criminal complaint and arrest warrants for KHALIL YACUB, a/k/a CARLOS ("YACUB"), KHALIL JAGHAMA, a/k/a SAM ("JAGHAMA"), and JASSER SALEH, a/k/a JOSEPH ("SALEH") (collectively referred to as the "SUBJECTS"), for violations of 18 U.S.C. § 2314 (transportation of stolen goods), 18 U.S.C. § 371 (conspiracy to commit offense), and 18 U.S.C. § 1028(a)(7) (unlawful possession or use of a means of identification) as detailed in Attachment A which is incorporated herein by reference. The statements contained in this affidavit are based upon my investigation, information provided by other law enforcement agents, and on my experience and training as a Detective and Task Force Officer of the FBI.

3.  Because this affidavit is being submitted for the limited purpose of securing an arrest warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable

1

cause to believe that YACUB, JAGHAMA, and SALEH have committed violations of Title 18, United States Code, §§ 2314, 371, and 1028(a)(7) as detailed in Attachment A.

## STATUTORY AUTHORITY

4. This investigation concerns alleged violations of 18 U.S.C. §2314, relating to the interstate transportation of stolen goods, 18 U.S.C. § 371, relating to the conspiracy to commit an offense, and 18 U.S.C. § 1028(a)(7), relating to a threat of force against a person with the intent to hinder, delay or prevent the communication to law enforcement regarding the commission of an offense.

a. 18 U.S.C. § 2314 prohibits knowingly transporting, or causing to be transported, in interstate commerce, stolen goods or wares having a value of $5,000 or more.

b. 18 U.S.C. § 371 prohibits any two or more persons from conspiring to commit an offense against the United States.

c. 18 U.S.C. § 1028(a)(7) prohibits the knowing possession of a means of identification without lawful authority with the intent to commit, or to aid in the commission, of a federal offense, and the possession or use was in or affected interstate commerce. r or judge of the United States of information relating to the commission or possible commission of a Federal offense.

## BACKGROUND OF THE INVESTIGATION

5. The FBI is investigating numerous crimes in connection with the SUBJECTS, including the interstate transportation of stolen goods (18 U.S.C. § 2314), conspiracy to do the same (18 U.S.C. § 371), and unlawful possession or use of a means of identification (18 U.S.C. § 1028(a)(7)). The investigation pertains to the alleged theft of powdered baby formula from retail stores, which is then purchased by the SUBJECTS at the Pit Stop and elsewhere. The

2

SUBJECTS then remove the security markings from the stolen formula and sell the formula via interstate shipment. As described below, it is also alleged that the SUBJECTS often use drug addicts as the "boosters" to steal the baby formula. The boosters are paid in cash. However, in an effort to intimidate and control the boosters, the SUBJECTS make threats towards the boosters, keep identification cards (or copies thereof) of the boosters, and at times have assaulted the boosters with weapons.

6.      YACUB (through his wife) owns and operates a convenience store located in Colerain Township, Ohio with a physical address of 2510 W Galbraith Road, Cincinnati, Ohio, known as the "Pit Stop." The Ohio Secretary of State holds a business filing for this address with the name of the corporation as Ayah Inc.; the statutory agent for this business is listed as YACUB's wife. This filing was active as of February 5, 2019. At various times, the SUBJECTS have all worked at the Pit Stop.

7.      The FBI has communicated with a Confidential Human Source ("CHS 1") regarding the involvement of the SUBJECTS in the purchase and transport of stolen baby formula through the Pit Stop. Your affiant considers CHS 1 to be reliable, as information provided by CHS 1 has been independently corroborated by law enforcement agents.

8.      CHS 1 has worked as an employee at the Pit Stop. CHS 1 has personally been involved in both selling stolen baby formula to the Pit Stop, as well as purchasing stolen baby formula as an employee of the Pit Stop. The stolen baby formula is often referred to as "milk." CHS 1 has provided recordings of interactions at the Pit Stop, which further corroborate CHS 1's reporting regarding the Pit Stop activities.

9.      CHS 1 advised that Pit Stop employees pay the shoplifters, or "boosters," for the stolen formula using cash from the business register. Employees then place a hand-written note

3

with the cash amount into the register to account for the outgoing money. The hand-written receipts were then used to reconcile the register at the end of the night. YACUB has stated that he will buy as much as an employee(s) can get and he requested they steal a specific formula, Enfamil Premium Infant Formula Powder 12.5 oz.

10.    On June 14, 2018, CHS 1 conducted a consensual recording with JAGHAMA, who was working at the Pit Stop.   During the meeting, CHS 1 sold ten cans of baby formula (which CHS represented as having been stolen from a retail store) to the Pit Stop for $5 per can. CHS 1 received $50 cash for the formula. JAGHAMA told CHS 1 "I need more, bring me more!" JAGHAMA also told CHS 1 to make sure the expiration dates are good on the cans. JAGHAMA directed CHS 1 to never come before 3:00 pm because JASSER and JAGHAMA close the store every night and do not arrive until 3:00 pm.

11.    Other witnesses interviewed by the FBI have corroborated that they have stolen baby formula for the SUBJECTS and sold it to the SUBJECTS at the Pit Stop.

12.    On October 29, 2018, a Colerain Township Police Department Confidential Human Source (hereinafter "CHS 2") reported to Agent(s) that he/she has sold stolen Enfamil baby formula as well as other items to three different businesses ran by YACUB. CHS 2 has sold to: (1) the Pit Stop, 2510 W. Galbraith Road, Cincinnati, Ohio 45239; (2) Crystals Up In Smoke, 5729 Glenway Avenue, Cincinnati, Ohio 45238; and (3) Cincy Up in Smoke, 11931 Hamilton Avenue, Cincinnati, Ohio 45231.

13.    The Ohio Secretary of State holds a business filing for Cincy Up in Smoke Inc with an address of 11931 Hamilton Avenue, Cincinnati, Ohio 45231; the statutory agent for this business is listed as an individual with the initials M.S.. This filing was active as of February 14, 2019.

4

14.     The Ohio Secretary of State holds a business filing for Crystals Up In Smoke Inc with an address of 5729 Glenway Avenue, Number C, Cincinnati, Ohio 45238; the incorporator and agent for this business is listed as YACUB. This filing was active as of February 14, 2019. YACUB and M.S. are both listed on the bank account for Crystals Up In Smoke.

15.     CHS 2 explained that, before the SUBJECTS will purchase stolen formula from an individual, the SUBJECTS take a photo of the individual's identification card (driver's license or state ID) and print a copy of it so that the SUBJECTS know where the person lives. CHS 2 has seen the copies of IDs kept in the office at the Pit Stop **(PREMISES #1)** and stated that the SUBJECTS keep them for "insurance," in case any of the boosters report them to the police.  At times, the SUBJECTS have asked how CHS 2 would respond to questions from the police if arrested for shoplifting.  On one occasion, SALEH told CHS 2, "Don't let us find out that you are being followed," and made a throat-cutting sign across his neck.  In addition, CHS 2 reported that the SUBJECTS have a taser behind the counter which they have brandished at times to chase CHS 2 out of the store or to scare CHS 2 generally.  CHS 2 was actually shocked by JAGHAMA's use of the taser on one occasion.

16.     In an interview with an identified individual (WITNESS 1), WITNESS 1 explained that when WITNESS 1 expressed interest in selling stolen formula at the Pit Stop, SALEH had WITNESS 1 join him in the office at the Pit Stop. SALEH then removed a handgun from the drawer of the desk and placed it in plain sight of WITNESS 1. After the gun was displayed to WITNESS 1, SALEH then explained the scheme and how WITNESS 1 would be paid for the stolen formula. WITNESS 1 believed SALEH produced the gun to intimidate WITNESS 1 and prevent WITNESS 1 from notifying or cooperating with law enforcement.

5

17.    CHS 1 also confirmed the presence of firearms and a taser in the possession of the SUBJECTS at the Pit Stop.

18.    CHS 2 has sold Enfamil and other items directly to JAGHAMA, YACUB, and SALEH. CHS 2 has also personally loaded the stolen items into the vehicles of SALEH, who drove a gold Honda Accord at the time (PJN4723), YACUB's Silver Honda Accord (HEA7315); and JAGHAMA's white minivan. CHS 2 has conducted three consensual recordings at the Pit Stop, receiving a total of $190.00 for the sale of stolen merchandise, which included cans of Enfamil baby formula. During one of the recordings, JAGHAMA produced the previously mentioned Taser and implied he would shock CHS 2. Your affiant considers CHS 2 to be reliable, as information provided in the past has been found accurate and was able to be independently corroborated.

19.    In order to combat theft of baby formula, some retailers apply stamps or stickers to the baby formula sold in their stores. CHS 1 stated when stolen cans of formula are purchased by the SUBJECTS, they use nail polish to remove the stamp. This process is referred to by the SUBJECTS as "cleaning the milk." After the stolen formula is bought and cleaned at the Pit Stop, the SUBJECTS typically place six cans of formula in each box and place the boxes in their vehicles for further transport.

20.    The Ohio Bureau of Motor Vehicles (OBMV) holds a vehicle registration for a white 2003 Chrysler Town and Country with license plate number HJM7606; this vehicle is registered to JAGHAMA.

21.    Through surveillance, the FBI determined the stolen baby formula was stored by the SUBJECTS in a storage unit; specifically Unit 522 at Compass Self Storage, 9343 Princeton Glendale Road, Cincinnati, Ohio 45011. The FBI obtained records related to the

6

lease of this storage unit from Compass Storage. According to these records, an employee of the Pit Stop (not the SUBJECTS) completed a Tenant Information Sheet on December 9, 2016 and listed as a phone number the publicly-available phone number for the Pit Stop. The employee listed an alternate contact as "Precious Greer" with a phone number of 818-262-0921. Records obtained by the FBI from AT&T indicate the subscriber of this phone number is YACUB, with an address of 2510 W. Galbraith Road, Cincinnati, Ohio 45239; the same address as the Pit Stop.

22.     Compass Self Storage is a secured facility with a fence that surrounds the area of the property where the storage units exist. There is a single vehicle gate that allows those with a leased storage unit to access the facility. When a storage unit is assigned, the user is given an access code. That code is entered in a keypad outside the gate, when an authorized access code is entered, the gate opens to allow access. No code is required to exit the facility. Compass Storage maintains records of when the access codes are used to access the facility.

23.     Observations by FBI surveillance confirmed when the SUBJECTS access the storage unit, there is a corresponding record of this in Compass Storage's Activity Log for Unit 522. For example, on June 26, 2018, JAGHAMA was observed exiting his apartment at 5304 Blossom Street, West Chester, Ohio and drove directly to the storage facility in his white mini-van with license plate number HJM7606. The FBI noted his arrival at the storage facility at 12:05 pm. The Activity Log obtained from Compass Storage has a logged entry for Unit 522 at 12:05:24 pm on June 26, 2018.

24.     The general manager of the storage facility reported to the FBI that he encountered two men unloading boxes into Unit 522 on July 10, 2018. The individuals had two vehicles parked in front of Unit 522, including a white mini-van with Ohio license plate

7

HJM7606 (known by the FBI as belonging to JAGHAMA). The general manager noticed a large quantity of baby formula stacked approximately "chest high" inside Unit 522.

25.     The Activity Log from Compass Self Storage indicates the storage unit was accessed three times between June 14, 2018 and June 23, 2018.

26.     During the week of June 24, 2018 through June 30, 2018, CHS 1 stated that multiple people came to The Pit Stop with stolen merchandise, such as baby formula (or "milk"), as well as electronics (such as iPads and tablets), and over-the-counter medicine (such as large $20-$35 boxes of Nexium and sinus medication). CHS stated that employee(s) are directed by YACUB to purchase the stolen items using cash from the store's register. CHS 1 estimated $350 - $400 worth of stolen baby formula were purchased on June 30, 2018 alone. In fact, CHS 1 stated that on this day one woman brought 40 cans of baby formula to the Pit Stop to be sold.

27.     During the previously mentioned surveillance at Compass Self Storage on June 26, 2018, FBI surveillance observed JAGHAMA unloading a large amount of metal cans, which appeared to be baby formula, from the mini-van and into the storage unit. JAGHAMA then drove from the storage unit directly to the Pit Stop.

28.     During the week of June 24, 2018 through June 30, 2018, the Activity Log from Compass Self Storage indicates the storage unit was accessed a total of five times on four different days.

29.     On July 2, 2018, JAGHAMA was observed, again, by FBI surveillance accessing the storage unit at Compass Self Storage. FBI surveillance noted JAGHAMA arrived at the facility at approximately 7:13 am; the Activity Log has a corresponding entry at 7:16:44 am.

8

JAGHAMA was observed unloading what was described as "bulk" amounts of canned containers from his mini-van and into the storage unit.

30.     Throughout July, August, and September, JAGHAMA continued to be observed by FBI surveillance, which included recorded video surveillance, accessing the storage unit at Compass Self Storage, all with corresponding entries in the Compass Self Storage Activity Log. During every visit to the storage unit, JAGHAMA was observed unloading multiple boxes from his mini-van and into the storage unit.

31.     On September 25, 2018, a Special Agent of the FBI observed approximately 12 cylindrical cans with yellow lids, which appeared to be baby formula, in the back of JAGHAMA's white Chrysler mini-van with Ohio license plate HJM7606. The vehicle was parked in the parking lot adjacent to 5304 Blossom Street, West Chester, Ohio, the known residential address for JAGHAMA.  On February 12, 2019, law enforcement obtained information from the Meadow Ridge Apartment Management office which confirmed that JAGHAMA resides at 5304 Blossom Street, Apartment 2206.

32.     On October 19, 2018, the Manager of Compass Self Storage reported to the FBI that on October 7, 2018, he saw the white mini-van that always accesses the unit (known to FBI as HJM7606 operated by JAGHAMA) along with another SUV that he had never seen before. The Manager reported the two vehicles stayed at the unit for approximately a half hour to an hour. A review of the Activity Log from October 7, 2018 indicates entries to the facility were made at approximately 9:36 am, 10:26 am, and 11:44 am. Activity logs from Compass Self Storage indicate the SUBJECTS accessed the facility 54 times from July 10, 2018 through October 6, 2018.

9

33.     On October 16, 2018, Judge William Mallory, State Of Ohio, Hamilton County Municipal Court, signed a search warrant to install, maintain, repair and subsequently remove a covert Global Positioning System (GPS), secreted in a can of Enfamil baby formula, and to monitor the movement of said Enfamil baby formula by electronic means.

34.     On October 19, 2018, police officers with the Colerain Township Police Department, pursuant to the aforementioned warrant, entered storage unit 522 and placed the can of Enfamil baby formula in the unit amongst approximately several hundred other cans of baby formula. Officers who entered the facility reported the floor of the unit was covered in mostly empty plastic pallets and stacks of unfolded card board boxes were along the wall. The chest high stacks of baby formula observed by the general manager of Compass Self Storage on July 10, 2018 were no longer present in the storage unit. Based on the foregoing, the FBI believes the SUBJECTS moved the stored baby formula from the storage unit on or about October 7, 2018.

35.     Upon the installation of the GPS device on October 19, 2018, the GPS device reported its position by cell-tower triangulation of 39.3282470,-84.4818091. This location was approximately 1.5 kilometers from the device's known location. An extension to the search warrant was authorized on December 18, 2018.

36.     Activity logs from Compass Self Storage indicate the storage unit was accessed 33 times from October 19, 2018 through January 24, 2019.

37.     On January 25, 2019, Task Force Officer Melissa Cooper was notified the GPS secreted inside the Enfamil baby formula had moved. The location of the Enfamil formula was reported by GPS at 10:30 am as 39.3762688,-84.4643318 which corresponds to a street address of 4642 Peakview Drive, Liberty Township, Ohio, owned by YACUB.

38.     The Butler County Ohio Auditor's website lists YACUB and his wife as the owners of 4642 Peakview Court, Liberty Township, Ohio. **(PREMISES #2)**.

39.     Law enforcement conducted surveillance at the residence and observed JAGHAMA's white Chrysler mini-van and a grey Infinity SUV bearing Ohio license plate K BELAL, previously identified as registered to Amal Saleh (wife of SALEH) in the driveway. The garage door was open and two individuals, who appeared to be JAGHAMA and SALEH, were unloading boxes of what appeared to be Enfamil formula from the vehicles. Shortly after, the vehicles were observed entering the Compass Self Storage along with an additional vehicle, a silver Mazda bearing Ohio License plate HOC5440. The vehicles proceeded to a storage unit in the approximate location of unit 522. Surveillance was unable to observe what was being loaded at the time, but could see the men moving items from the storage unit to the vehicles.

40.     After the three vehicles left the storage facility, it was determined the drivers of the vehicles were SALEH, JAGHAMA, and a third person. During transport, FBI surveillance observed cans of Enfamil baby formula stacked to the ceiling and filling the entire rear of the Infiniti SUV, from just behind the first row of seats all the way to the rear liftgate. The three vehicles returned to 4642 Peakview Drive and began unloading the formula into the garage. Surveillance observed the Mazda SUV with license plate HOC5440 driving away from the residence, and YACUB was observed riding in this vehicle. The Mazda SUV drove directly to Cincy Up in Smoke, 11931 Hamilton Avenue, Cincinnati, Ohio 45231, where YACUB was observed exiting this vehicle.

41.     On January 30, 2019, FBI surveillance observed the garage at 4642 Peakview Court through an open garage door. The stacked cases of baby formula observed on January 25, 2019 were no longer present in the garage.  YACUB was observed walking through the garage

11

and entering a vehicle parked in the driveway. The vehicle is a silver Honda Accord with license plate HEA7315 and is registered to YACUB. YACUB drove this vehicle to Cincy Up in Smoke and parked directly in front of the store. M.S. exited the business, with a bag in hand, and entered the passenger's side of YACUB's vehicle. The two sat in the vehicle for several minutes, then M.S. returned to the business when a customer arrived.

42. On February 2, 2019 at or around 8:42 am (EST), the GPS device reported its location by cell-tower triangulation as 39.2762043,-84.8759869. This location is Indiana near Interstate-74, approximately 3 miles from the Ohio border. Over the course of the next several days the GPS device periodically reported its location, which included coordinates in California.

## CONCLUSION

39.     Based on the aforementioned factual information, your Affiant respectfully submits that there is probable cause to believe that KHALIL YACUB, JASSER SALEH, and KHALIL JAGHAMA, knowingly transported, or caused to be transported, in interstate commerce, stolen goods or wares having a value of $5,000 or more, in violation of 18 U.S.C. §2314;unlawful possession or use of a means of identification, in violation of 18 U.S.C. § 1028(a)(7); and conspired to do so, in violation of 18 U.S.C. §371.  Therefore, I respectfully request the issuance of warrants for the arrest of KHALIL YACUB, JASSER SALEH, and KHALIL JAGHAMA.

Melissa Cooper
Task Force Officer
Federal Bureau of Investigation


Sworn and subscribed before me this _20_ day of February 2019.


HON. KAREN L. LITKOVITZ
UNITED STATES MAGISTRATE JUDGE

13